## STATE v. CUSHING GROCERY CO.

No. 17953.   Opinion Filed Dec. 18, 1928.

Rehearing Denied Feb. 26, 1929.

C. C. Suman, Co. Atty., for R. W. Stoutz for plaintiff in error.

Brown & Stater and Lydick, McPherren & Jordan, for defendant in error.

HEFNER, J.   This cause of action was instituted by the tax ferret of Payne county before the county treasurer, wherein it was sought to levy an additonal assessment against the Cushing Grocery Company, a corporation, defendant in error herein and defendant below.   The additional assessment was divided over the tax years of 1923, 1924, and 1925.

The proceedings sought an assessment for each of the three tax years in the amount of $125 000, total value of capital, surplus, and undivided profits, less deductions for property assessed and paid, leaving a net assessment of $78 000 claimed for ·each year.

The defendant, Cushing Grocery Company, appeared and made oral objection to the proposed assessment by the county treasurer, and on a final hearing the treasurer ordered the assessment for each of the said three years. The defendant appealed to the county court, and the state moved the county court to dismiss the appeal because there were no **written** objections filed by the defendant before the county treasurer. We do not think the statute providing for the written objection before the county treasurer is jurisdictional, and the county court committed no error in refusing to dismiss the appeal for this reason.

The case was tried upon an agreed statement of facts which is as follows:

"With respect to the facts: That the Cushing Grocery Company is a corporation, organized under the laws of the state of Oklahoma, and having its principal place of business in Cushing, Payne county, Okla., and its branch store at Stillwater, Payne county, Okla., and this was true in the years 1923, 1924, and 1925. That while the taxes involved herein were levied for the fiscal years beginning July 1, 1922, and ending June 30, 1923, and the fiscal year beginning July 1, 1923, and ending June 30, 1924, and the fiscal year beginning July 1, 1924, and ending June 30, 1925, such taxes referred to, and will hereafter be referred to what is commonly known as 1923, 1924, and 1925 taxes, based on assessments as of the first of January of each of said three years. That the Cushing Grocery Company rendered its taxes for the years 1923, 1924, and 1925, for each of said stores separately, being in the amounts heretofore stated, and as shown upon the assessment lists themselves, which are marked exhibits 1 to 6, inclusive, which are introduced and admitted in evidence without objection.

"That after these assessments were rendered, the assessments were by the assessor duly spread upon the tax rolls of Payne county for those years, and the property was accordingly assessed in that manner in the amounts shown, aggregating $37,000 for each year, and that the assessment rolls, including these assessments and property for each of these years, was duly certified to the board of equalization, along with all other assessments in the county, and the levy accordingly made. That the Cushing Grocery Company paid its taxes for each of these years upon said assessments, and in such amounts as is evidenced by tax receipts, which were duly issued at the time of payment, but which for brevity are not made a part of this record. That the taxes were paid in accordance with the assessments as heretofore stipulated.

"It is further stipulated and agreed that for the three years mentioned, and on January 1st of each of said years, the Cushing Grocery Company had in Payne county, Okla., $125,000, value of property in the aggregate, for each such year, which included $10,000 value of motor trucks taxed by the state license law, and the balance being made up of accounts or notes receivable, of stock of merchandise in both stores and all furniture and fixtures in both stores, and money on hand, if they had any, and for the year 1923 some real estate of the assessed value of $600, but no real estate for the years 1924 and 1925, and the aggregate value just stated was the fair cash value of the property for the purposes of this trial. That they paid the state license tax upon the trucks to the state, and they paid the ad valorem tax by the assessments already in evidence to the amount of $37,000, aggregate, for each year. That the state claims the difference of $88,000 should be spread upon the tax rolls for each year, which comprises the issues in this case.

"By Mr. Stoutz: In view of the stipulation of facts against all motor trucks, we don't ask any assessment based upon that proposition, because they were legally entitled to a deduction. The state reduces its claim from $88,000 to $78,000, because of the motor trucks already paid upon."

From the agreed statement of facts it is apparent that the Cushing Grocery Company rendered its taxes for the years 1923, 1924, and 1925, and for each of its stores separately as shown upon the assessment rolls, which were introduced and admitted in evidence without objection. While the return of the Cushing Grocery Company was not in compliance with section 9962, C. O. S. 1921, it was made upon an assessment list furnished by the county assessor and was sworn to before the county assessor. The oath on each of the six assessment lists is as follows:

"I, the undersigned affiant, do solemnly swear (or affirm) that I have listed above and within all the lands, town and city lots, personal property, money and credits, subject by law to taxation and owned, used, possessed or controlled by me, and by law required to be listed therein by me for myself or any other person or persons, as guardian, husband, parent, trustee, executor, administrator, receiver, accounting officer, partner, factor, bailee, or agent and that I have made true answers to the above and foregoing questions according to the best of my knowledge, so help me, God."

From the agreed statement of facts it is not clear whether any of the property of the Cushing Grocery Company was not listed for taxation or whether it was all listed and was undervalued. The agreed statement of facts, aided by the affidavit attached to the

returns, is sufficient to justify us in holding that the company actually listed for taxation all its property.

After the assessments were rendered they were duly spread upon the tax rolls of Payne county for those years and were duly certified to the board of equalization and the tax levy made, and the taxes were paid for each of these years.

The company had two stores in Payne county, one at Cushing and the other at Stillwater. A separate return was made for each store. For the purpose of this suit it was agreed that the reasonable market value of the property owned by the Cushing Grocery Company for each of the years was $125,000.

The tax ferret deducted $37,000, the assessed value of the property, and $10,000, the value of motor trucks on which the license fee had been paid to the state, from $125,000, the agreed value of the property, which left a balance of $78,000. The tax ferret claims the $78,000 is omitted property. The grocery company contends it is not an assessment of omitted property, but is an attempted assessment of underassessed or undervalued property upon which the taxes had already been paid. The trial court found that the grocery company was assessed upon its property for the years 1923, 1924, and 1925 in the sum of $37,000 for each of said years and that it paid taxes upon that basis. It further found that the property was undervalued or underassessed, but was not omitted property, and, therefore, found in favor of the grocery company.

We think the evidence is sufficient to sustain the finding of the trial court that the assets of the company were actually assessed and taxes paid thereon.

Since the property was actually assessed and the taxes paid thereon, was it subject to an action by the tax ferret?

Plaintiff is proceeding under authority given the county commissioners in section 9798, C. O. S. 1921, which, in part, is as follows:

"The board of county commissioners of any county in this state may contract with any person or persons to assist the proper officers of the county in the discovery of property not listed and assessed, as required by existing laws, and fix the compensation at not to exceed fifteen per cent. of the taxes recovered under this article. * * *"

This statute applies only to "omitted" property, or property not listed and assessed, and does not confer the power to revalue or reassess property which has already been assessed. The object of this statute is to discover "omitted" property, and this is the entire scope contemplated by the act.

This action is based on section 9606, C. O. S. 1921, which is as follows:

"All corporations organized, existing or doing business in this state, for profit, other than public service corporations, assessed by the State Board of Equalization, and other than national banks, state banks, and trust companies, shall be assessed upon the value of their moneyed capital, surplus and undivided profits, as the same existed on the first day of January of each year, in the county, town, district or city where such corporation is located, less the assessed valuation of any real estate located in this state owned by such corporation and listed separately in the name of such corporation. 'Moneyed capital,' as used in this section, shall include money actually invested in the business of such corporation, whether represented by certificates of stock, debentures, or bonds."

This statute, standing alone, indicates that certain corporations should be assessed upon the value of their moneyed capital, surplus, and undivided profits, as the same existed on the first day of January of each year. However, this is not the only statute in reference to the taxation of such corporations. Section 9625, C. O. S. 1921, provides:

"When a person is doing business in more than one county, the property and credits existing in any one of the counties are to be listed and taxed in that county; and credits not existing in nor pertaining especially to the business in any one county are to be listed and taxed in that county where his principal place of business may be: Provided, that bank deposits shall be listed in the name of the owner in the township, city, town, or school district where he resides. Each individual of a partnership is liable for the taxes due from the firm."

This section clearly indicates that the property itself shall be listed and taxed in the county where it is situated. If, however, there are any credits not existing in nor pertaining especially to the business in any one county, then such credits are to be listed and taxed in the county where the principal place of business is located.

Section 9962, C. O. S. 1921, in substance, provides that the managing officer of every corporation shall make and deliver to the assessor of the county where its principal business is transacted, a statement of the authorized capital stock and the amount paid up thereon, the amount of outstanding bonded indebtedness, names of stockholders, a description and value of each tract of land owned by the corporation, description and

value of all other property owned, the total amount of invested capital, surp.us and undivided profits, and a description and value of all real and personal property listed and assessed separately. The section also provides a penalty for making an incorrect or incomplete statement.

Section 9599, C. O. S. 1921, in substance, provides that every person of age and sound mind shall list all. his personal property. In event such returns are not made, the law also provides a penalty for failure to make the same.

Section 9584, C. O. S. 1921, among other things, provides that in the construction of the chapter on taxes the term "person" shall include firm, company, or corporation.

Section 9616, C. O. .S. 1921, defines the duty of the assessor, and is as follows:

"In order to make such assessments, such assessor shall demand from each person and firm and from the president, cashier, treasurer or managing agent of each corporation, association or company within his city, town or township, a statement under oath or affirmation of all the real estate within the city, town or township and personal property owned, claimed or in use, possession or control of such person, firm, corporation, association or company, whether held by the party sworn for himself or as agent for another, and shall set out in such sworn statement an itemized account of all classes of property, subject by law to assessment, by him so held or controlled. If any person, firm, officer or agent shall neglect or refuse, on demand of the assessor, to give under oath or affirmation, a statement required by this section, the assessor shall ascertain and estimate from the best information he can obtain, the number, amount and cash value of all of the several species of property required, and shall list the same accordingly, and the value so fixed by the assessor shall not be reduced by the board of equalization."

This is doubtless the section the tax assessor was following in the instant case. The Cushing Grocery Company seems to have owned real estate one year, and that was duly returned and described. The managing officer of the company swore that he had listed all of the lands, town and city lots, personal property, money and credits, subject by law to taxation and owned, used, possessed, or controlled and by law required to be listed by him or any other person, etc. The affidavit seems to fully comply with th's section.

The section also provides a penalty if any person or firm shall neg'ect or refuse, on demand of the assessor, to make a statement required by this section. In such event it is made the duty of the assessor to ascertain and estimate from the best information he can obtain the number, amount, and cash value of all of the several species of property and shall list the same accordingly, and the value so fixed by the assessor shall not be reduced by the board of equalization. In addition to this, section 9618, C. O. S. 1921, provides that in case any person shall fail or refuse to render the list under oath, it is made the duty of the assessor to list the property of such person and as a penalty add 50% to the actual value thereof.

The statutes provide two methods for the collection of back taxes on omitted property and also provide methods for reaching undervalued property. A portion of section 9597, C. O. S. 1921, is as follows:

"If any real or personal property be omitted in the assessment of any year or years, and the property thereby escape just and proper taxation, at any time and as soon as such omission is discovered, the county assessor or the State Board of Equalization whose duty it is to assess the class of property which has been omitted, shall at any time, cause such property to be entered on the assessment rolls and tax books for the year or years omitted, and shall, after reasonable notice to the parties affected, in order that they may be heard, assess such omitted property and cause to be extended against the same on the tax list for the current year all arrearage of taxes properly accruing against it, including interest thereon at the rate of six per cent. per annum, from the time such tax should have become delinquent. If any tax on any property liable to taxation is prevented from being collected for any year or years, by reason of any erroneous proceedings, or failure to give notice, or otherwise, the amount of such tax which such property should have paid or should have been paid thereon shall be added to the tax on such property for the current year, and if for want of sufficient time or for any other cause such assessment cannot be entered on the tax books and the tax thereon extended on the tax lists for the current year, the same shall be done the following year; provided, however, that whenever any real or personal property, on account of same being grossly undervalued on account of false representations or concealments made by the owner or owners or their agents in rendering the same for assessment, and in the assessment made in any year or years, the property thereby escapes just and proper taxation, at any time within three years thereafter the county assessor or the State Board of Equalization, whose duty it is to assess the class of property which has been so undervalued, shall, within three years from

the date of such undervaluation, cause such property to be entered on the assessment roll and tax book for the year or years so undervalued, and shall, after reasonable notice to the party affected in order that he may be heard, reassess such undervalued property and cause same to be extended against said property on the tax lists or rolls for the current year with all arrearage of taxes thus properly accruing against it, including interest thereon at the rate of six per cent. per annum from the time such tax should have become delinquent. * * *"

Under this statute, omitted property may be placed on the tax roll at any time without any limitation whatever as to the time when it may be done. In other words, all property not exempt from taxation should bear its burdens in the support of the government, and if property be omitted, it can be placed on the tax rolls at any time when such omission is discovered.

Whenever any real or personal property, on account of same being grossly undervalued on account of false representations or other concealments made by the owner in returning the same for assessment, escapes just and proper taxation, at any time within three years thereafter the county assessor or the State Board of Equalization, whose duty it is to assess the class of property which has been so undervalued, shall within three years from the date of such undervaluation cause such property to be entered upon the assessment roll for the years so undervalued, and shall reassess such undervalued property and cause same to be extended against said property on the tax rolls or lists for the current year with all arrearage of taxes thus properly accruing against it, including interest thereon at the rate of six per cent. per annum from the time such tax should have been delinquent.

The other method to reach the omitted property is found in section 9798, C. O. S. 1921, which, in part, is as follows:

"The board of county commissioners of any county in this state may contract with any person or persons to assist the proper officers of the county in the discovery of property not listed and assessed, as required by existing laws, and fix the compensation at not to exceed 15 per cent. of the taxes recovered under this article. * * *"

As said before, it is under this statute that this proceeding is brought. If the property was omitted property, it can be maintained under this statute; but if it was not omitted properly, then it cannot be maintained.

In the case of Weatherford Milling Co. v.

Duncan, 42 Okla. 242, 140 Pac. 1184, this court said:

"Where a milling corporation has disposed of all of its capital stock and invested the proceeds in tangible property, real and personal, and an attempt is made to assess its capital stock to the corporation, as omitted property, under the provisions of the Tax Ferret Statute, such attempt is illegal, and not warranted by the statutes, and the action of the treasurer making such assessment or attempt to collect the taxes thereon may be restrained by injunction."

This case was decided at the April term, 1914. In the case of J. W. Wolverton Hardware Co. v. Porter, Comanche County Treasurer, 61 Okla. 171, 160 Pac. 906, this court said:

"Section 7318, Rev. Laws 1910, provides that all corporations organized, existing, or doing business in this state for profit other than public service corporations * * * shall be assessed upon the net value of their moneyed capital, surplus, and undivided profits as the same existed on the 1st day of March of each year in the county, town, district, or city where such corporation is located, less the assessed valuation of any real estate located in this state owned by such corporation and listed separately in the name of such corporation. Moneyed capital, as used in this section, shall include money actually invested in the business of such corporation, whether represented by certificates of stock, debentures, or bonds. * * *

"It appears to us that this case should have been tried out upon its merits, and if, upon the trial thereof, in determining the net value required by the statute any property had been omitted from a consideration when this assessment was made, that the same might lawfully be assessed under the provisions of the statute quoted above. But if said property had not been omitted, but merely undervalued, that valuation could not be disturbed in this proceeding."

And the second paragraph of the syllabus is as follows:

"Where a corporation has disposed of all of its capital stock and invested the proceeds in property upon which the taxes have been paid, an attempt to assess the capital stock to the corporation as omitted property under the provisions of the aforesaid statute is illegal and not warranted by law."

This was a case where all of the property of the corporation had been assessed, but the corporation had not been assessed upon its moneyed capital, surplus, and undivided profits, and the tax ferret brought an action in an attempt to assess the capital stock of the corporation as omitted property

under the authority of the above statute. The stock of the corporation had been sold to private individuals and the money had been invested in property and the property had all been placed on the tax rolls and the taxes paid thereon. In such a case this court held that where the corporation had disposed of its capital stock and invested the proceeds in property upon which the taxes had been paid, an attempt to assess the capital stock to the corporation as omitted property was illegal and not warranted by law.

It is the policy of the law that all property not exempt from taxation shall bear its just burdens in the support of the government. When this has been done, the requirements of the law have been met.

The Wolverton Hardware Case, supra, was decided in 1916, and in 1924 this court, in the case of Payne County v. Empire Petroleum Co. et al., 104 Okla. 42, 230 Pac. 710, said:

"Under section 7449, Rev. Laws 1910 (section 9798, C. O. S. 1921), the board of county commissioners of any county in this state is authorized to contract with any person or persons to assist the proper officers of the county in the discovery of property not listed and assessed for taxation, and the authority conferred by this provision of the statute applies only to property omitted from assessment, and does not confer the power or authority to revalue or reassess property which has already been assessed. J. W. Wolverton Hdw. Co. v. Porter, 61 Okla. 171, 160 Pac. 906.

"Where one company owns refined oils stored in tanks on and in the possession of another company, and the latter company renders such property for taxation in its own name and pays the taxes thereon, such property may not thereafter be entered upon the tax rolls as omitted property."

This was a case where one corporation actually owned the property and another and different corporation listed the property for taxes in its own name and paid the taxes thereon. The tax ferret brought a proceeding to have the property listed as omitted property, and this court held such an action could not be maintained and the property was not omitted property.

In the case of In re Oklahoma Nat. Life Insurance Co., 68 Okla. 219, 173 Pac. 376, the second paragraph of the syllabus is as follows:

"An assessment for taxation, by name, on the moneyed capital, surplus, and undivided profits of a corporation, is an assessment upon its property and assets. The term 'moneyed capital, surplus and undivided profits,' as used in section 7318, Rev. Laws 1910, as amended by section 4, art. 1, c. 240, Session Laws 1913, p. 632, providing that certain corporations 'shall be assessed upon the net value of their moneyed capital, surplus and undivided profits', construed with statutes in pari materia, includes all the assets, money and property, belonging to or owned by the corporation."

In that case this court held an assessment for taxation on the moneyed capital, surplus, and undivided profits of a corporation was the same thing as an assessment upon its property and assets, and that the moneyed capital, surplus, and undivided profits, construed with statutes in pari materia, include all the assets, money, and property belonging to or owned by the corporation. In other words, the moneyed capital, surplus, and undivided profits is equivalent to all the assets, money, and property belonging to or owned by the corporation. When the corporation has made a return in its name placing all of its assets, money, and property belonging to or owned by it on the tax rolls at its fair cash value, and the taxes have been paid thereon, the corporation has borne its just proportion of the burdens of government.

If a corporation were to be assessed only on the invested capital, surplus, and undivided profits and not upon its physical assets, it would be easy to evade the law. A return could be made by the corporation in exact compliance with the law and the levy could be entered on the tax rolls against the invested capital, surplus, and the undivided profits and the taxes paid thereon. When the return was once made and taxes levied against the invested capital, surplus, and undivided profits, there could be no omitted property. If any of the property had been omitted in estimating the value of the invested capital, surplus, and undivided profits, it would be an undervaluation and not an omission as was held in the case of In re Assessment of Durant National Bank, 107 Okla. 65, 230 Pac. 712, wherein this court in the second and fourth paragraphs of the syllabus said:

"Under section 9798. C. O. S. 1921, the board of county commissioners are authorized to contract with a person or persons to assist the proper officers of the county in the discovery of property not listed and assessed for taxation, and the authority conferred by this provision of the statute applies only to property omitted from assessment, and does not confer the power or authority to revalue or reassess property which has already been assessed.

"The general rule applicable to corporations which under the law are assessed upon their moneyed capital, surplus, etc., is, if said corporation fails to report any item or species of property of any kind or character owned by it that it is called upon to report to the assessor, and the value thereof, the failure to report said items or species of property thereof is an omission, and not an undervaluation of the property of the corporation, and the item or species of property which the corporation failed or refused to report may be assessed as omitted property either under section 9597 or 9798, Comp. Stat. 1921."

In the Durant National Bank Case it was admitted the $80,000 invested in building bonds was not taken into consideration in making the tax levy. This court correctly held that, inasmuch as the assessment could only be made against the shares of stock to the stockholders, although the valuation fixed thereon is undervalued by reason of having made an improper deduction, the bonds could not be reassessed as omitted property.

The court in that case then clearly draws the distinction between the assessment made against banks and the general rule applicable to corporations which, under the law, are assessed upon their moneyed capital, surplus, and undivided profits, and correctly held that if such corporation failed to report any item or species of property of any kind or character owned by it that it is called upon to report to the assessor, then such an item of property as is not reported is an omission and not an undervaluation, and the same may be assessed as omitted property.

Suppose the Cushing Grocery Company in the instant case had not reported its property in its store at Cushing, but did report its property in the store at Stillwater. Then the property at Cushing would be omitted property and would be subject to be assessed as omitted property either under section 9597 or 9798, C. O. S. 1921. In other words, if a corporation causes a portion of its assets to be placed upon the tax rolls and the tax is levied and paid. the property that is so placed and on which the tax is paid is not omitted property. On the other hand, in placing its property on the tax rolls, if it omits any of its assets and the same are not placed on the tax rolls, the assets so omitted may be assessed as omitted property under either of the sections referred to above.

Since we have held the record in the instant case discloses that all of the property of the Cushing Grocery Company was placed on the rolls by it in its return, it cannot be held that any of such property is omitted property, and it is therefore not subject to be placed on the rolls as omitted property. There is a remedy for the undervaluation, as has hereinbefore been pointed out.

The judgment of the trial court is affirmed.

BRANSON, C. J., and HARRISON, PHELPS, LESTER, HUNT, and CLARK, JJ., concur.

MASON, V. C. J., concurs in the conclusion.

RILEY, J., dissents.

RILEY, J. (dissenting). I assert that the majority opinion herein is wrong from the beginning. It conceives the wrong facts as a basis and nurtures a fallacy in law, destructive of the public policy as expressed by the Legislature in the enactment of section 9606, C. O. S. 1921, which section directs a tax to be levied upon all of the value of certain corporations.

The first statement of fact in the opinion is:

"This cause of action was instituted by the tax ferret of Payne county before the county treasurer wherein it was sought to levy an **additional** assessment against the Cushing Grocery Company, a corporation. * * * The **additional** assessment was divided over the tax years 1923-24 and 25."

I think that an erroneous and prejudicial statement of fact. For the years stated there was no just or proper corporate assessment, and perforce there could be no additional assessment as stated in the majority opinion. The record herein, and Exhibits 1 to 6, inclusive, show that this corporation never complied with the law (section 9606, supra) requiring a corporate assessment, but sought to escape the force thereof by making an individual return of its property for taxation. The form sheet used for such return upon its face, in the first sentence, plainly showed these words: "for individuals * * * not to be used by banks or other corporations. * * *"

The majority opinion, in effect, nullifies the statute, section 9606, supra. To judicially declare a legislative act unconstitutional, and so void, is a serious matter and an act not to be lightly done. Trevett v. Wheeden, 4 Am. St. Trials, 584, the proceedings of the General Assembly of Rhode Island against the Judges of the Supreme

Court for their judgment in the case of Trevett v. Wheeden. Also In re Initiative Petition No. 79 (128 Okla. 269, 263 Pac. 635).

Where an act is held unconstitutional, and where the object of the legislation is desirous or necessary for the public good, the objective may often be reached by re-enactment, in view of the Constitution, or by constitutional amendment. Under such conditions the way is made open. The advocates of the act must necessarily move forward down the broad road to achievement by re-enactment or constitutional amendment, or else capitulate through inaction. Where the cause is just and where the act is held unconstitutional, the opportunity of achievement is thrust upon the proponents by the judiciary and therein the public welfare is conserved. But as in the case at bar, where a statute is not declared unconstitutional, but simply nullified by judicial interpretation, herein and under these circumstances, I assert the hopelessness of the situation and apprehend therein the aggressiveness of the judiciary beyond that sphere allotted to it under the triune division of the powers. Article 4, sec. 1, of the Constitution.

I bemoan the fact that the people of the state cannot tax corporations, as such, notwithstanding the expressed desire. I would look to the sovereign as all powerful. To me "the people," acting in the adopted mode, according to the basic law, and "the sovereign" are synonymous. Therefore, hoping the views expressed in the majority opinion to be merely transitory, I desire to express my dissent to the conclusions reached and to the law therein stated, in order to be helpful toward a final correct solution of the problem.

The corporation before us agreed that its property was of the value of $125,000; that it was assessed in the manner shown for $37,000. The undervaluation is gross, consequently not "just," and I say that the assessment as made was not "proper" for the reason that it was not according to the statute providing for a corporate assessment, therefore I think there was "omitted" property, as contemplated by section 9597, C. O. S. 1921, but the majority opinion, for reasons which I cannot follow, holds that the assessment as made was in substantial compliance with the law, for that reason not subject to being proceeded against as omitted property.

The opinion states, page 3, "The tax erret claimed the $78,000 is omitted property." I do not think that statement proper. I think it ought to be as follows: The state

of Oklahoma maintained there was no just or proper assessment of the corporation, and consequently all of its property was omitted —that the corporation is entitled to deductions for what value it had assessed, and considering such assessment, there was omitted value in the sum of $78,000, subject to a proper assessment for the first time.

On page 10 of the opinion, it is said, in reference to In re National Life Insurance Co., 68 Okla. 219, 173 Pac. 376:

"In that case this court held that an assessment for taxation on moneyed capital, surplus, and undivided profits of a corporation was the same thing as an assessment upon its property and assets, and that the moneyed capital, surplus, and undivided profits, construed with statutes in pari materia, includes all of the assets, money, and property belonging to or owned by the corporation."

If the first part of that statement is true, I cannot understand the language used in that case, and I, therefore, challenge the statement. I agree to the latter part of the statement, but object to the "double-barreled" proposition.

On the same page the opinion speaks of the ease of evasion of the law under a different interpretation from that made. I am of the opinion that evasion herein is complete by nullification, and forced corporation taxation under section 9606, supra, in this state is a thing dead, and being so, the law ought to be repealed under the theory of the equality of taxation, for there should be no premium upon disrespect for law.

It may be suggested that the law could be put in force by re-enactment and that responsibility for nullification may be shifted from this court to the court as it existed when the case of Wolverton Hdw. Co. v. Porter, 61 Okla. 171, 160 Pac. 906, was written. I deny both of these suggestions for the following reasons: Since the Wolverton Case was written by a Commissioner the statute has been twice amended. If life could be renewed in the statute by subsequent legislation, that would have been done. It would now be in effect. Moreover, the statute has five times been construed as in effect, so the responsibility of nullification is centered wholly upon the majority opinion herein.

The stipulated facts showed that the defendant company was possessed of taxable assets valued at $125,000, for each of the years 1923-1924-1925, and that such property embraced two stocks of goods besides accounts and notes receivable, furniture and

fixtures and money on hand. Exhibits 1 to 6 show that the only personal property assessed was two stocks of goods. I have said that the assessment was not a corporate one as required by law.

In re Assessment Oklahoma Natl. Life Ins. Co., 68 Okla. 219, 173 Pac. 376, it was said:

"Section 7302, supra, plainly indicates the intention that all property of corporations except such as is exempt shall be taxed. Since, as before stated, the only assessment of the property of a corporation is that under the name of 'moneyed capital, surplus and undivided profits,' taxable personal property not included within that assessment will escape taxation, therefore a construction of the term 'capital' other than as including all the property and assets of the corporation would defeat the intention thus plainly expressed in section 7302. * * * Therefore, the statute provides for an assessment, not upon the amount invested in its business, but upon the 'net value' thereof, which construed in connection with section 7307, supra, and article 10, section 8 (Williams', sec. 273) of the Constitution, means the 'fair cash value, estimated at the price it would bring at a fair voluntary sale' of all the property and assets of the corporation, less the assessed value of the real property listed separately and other deductions which may be allowed."

It seems manifest that where the corporation makes default in all requirements of the things required by section 9962, C. O. S. 1921, and attempts to return for taxation, on an individual form, only a part of its assets which it has stipulated is only a part of its taxable property, such corporation has failed to make even a colorable attempt at a proper assessment, and the utmost it can claim is credit for such partial assessment as was made. The individual return made by this corporation for each of the years mentioned for personal property was for stock of goods as for $25,000 for Cushing and $12,000 for Stillwater, making an aggregate of $37,000 total assessment for each of said three years. The exhibited assessments show for the year 1923 said property was listed merely as "mdse.", in 1924 it was "groc. stock," while in 1925 it merely filled the amount opposite item No. 36 in the printed individual blank. What it should have reported as demanded by the provisions of section 9962, supra, was:

(1)  Its authorized capital stock;

(2)  Its paid-up capital stock;

(3)  Amount of its bonded indebtedness;

(4)  Names of stockholders and amount of shares of each;

(5)  Description and value of all other property owned;

(7)  Total amount of invested capital;

(8)  Total amount of surplus and undivided profits;

(9)  Description, location, and assessed value of all real estate and tangible personal property.

The stipulation is as follows:

"It is further stipulated and agreed that for the three years mentioned, and on January 1st of each of said years, the Cushing Grocery Company had in Payne county, Okla., $125,000 value of property in the aggregate, for each such year, which included $10,000 value of motor trucks taxed by the state license law, and the balance being made up of accounts or notes receivable, of stock of merchandise in both stores and all furniture and fixtures in both stores, and money on hand, if they had any, for the year, 1923, some real estate of the assessed value of $600, but no real estate for the years 1924 and 1925, and the aggregate value just stated was the fair cash value of the property for the purposes of this trial. That they paid the state license tax upon the trucks to the state, and they paid the ad valorem tax by the assessments already in evidence to the amount of $37,000 aggregate for each year."

So it will be observed that the stipulated agreement was that the aggregate property included, besides stocks of merchandise, accounts and notes receivable and furniture and fixtures and money on hand, if any. There was no assessment against the aggregate value by name "moneyed capital, surplus, and undivided profits." And it is evident that there was no assessment even under an individual form of the other stipulated items embraced in such aggregate not included in the assessments as made. It must be presumed that the value of such stocks were as returned and no more, because the presumptions and intendments of law are against the idea that a false return was made or that the assessor was recreant in his duty to assess the same at the real value thereof, and the taxpayer is estopped to deny the value he gives. 37 Cyc. 994; Tampa v. Muggor, 40 Fla. 326, 24 So. 489; Denison v. Williamson Co., 153 Ill. 516, 39 N. E. 118; Central Pac. R. Co. v. California, 162 U. S. 113.

Obviously the remainder of the aggregate of $125,000 value per annum as stipulated has a value of the difference between that amount and the total of the $37,000 per annum as assessed, which would be $88,000 per annum for omitted, unassessed items, less $10,000 for motor vehicles otherwise assessed,

leaving as admitted omitted items and species of property of the value of $78,000.

The opinion herein states:

"Suppose the Cushing Grocery Company, in the instant case, had not reported its property in its store at Cushing, but did report its property in its store at Stillwater, then the property at Cushing would be subject to be assessed as omitted property either under section 9597, or section 9798, C. O. S. 1921. In other words, if a corporation causes a portion of its assets to be placed upon the tax rolls and the tax is levied and paid, the property that is so placed and on which the tax is paid is not omitted property. On the other hand, in placing its property on the tax rolls, if it omits any of its assets and the same are not placed on the tax rolls, the assets so omitted may be assessed as omitted property under either of the sections referred to above."

The fourth paragraph of the syllabus in the case of In re Assessment of Durant Natl. Bk., 107 Okla. 65. 230 Pac. 712, is said by the majority opinion to be a correct statement of the law. Accepting that as the law, under the agreed statement of fact as above pointed out in figures, this judgment ought not to be affirmed, but ought to be remanded, at least for assessment of the admitted value of (1) notes receivable, (2) furniture and fixtures, and (3) money on hand, which items were wholly omitted from the assessment made, and agreed to be of stated value. The law expressed in the Durant National Bank Case, supra, upon which we agree, is that:

"* * * If said corporation fails to report any item or specie of property of any kind or character owned by it that it is called upon to report. the failure to report * * * said items or specie of property thereof is an omission, and not an undervaluation of the property of the corporation."

See Commonwealth v. Louisville Gas Co. (Ky.) 122 S. W. 164.

See B. & O. S. W. R. Co. v. Com. (Ky.) 198 S. W. 35, where it was held:

"When a railroad company or other corporation makes a report that it is required to make by the statutes, it should make a full, itemized and truthful report of all the property it is required to report, giving the value of the items so reported. If it fails to make such report, it will not be heard to say, in a suit against it to have omitted property assessed, that the property charged to have been omitted, and which should have been reported under an item describing that class of property, was included in some other item of property that it did report. * * * A further presumption will be that the board in making the assessment confined itself strictly to the items reported by the company."

The Supreme Court of the United States, in the case of Adams Express Co. v. Ohio, 166 U. S. 185, said:

"What a mockery of substantial justice it would be for a corporation, whose property is worth to its stockholders for the purposes of income and sale $16,800,000, to be adjudged liable for taxation upon only one-fourth of that amount."

Why not apply that principle where this corporation evaded the statutes with less than one-third of its value being assessed?

In Reynolds v. Bowen (Ind.) 36 N. E. 756, it was said: "So that what is not given in is omitted."

This court in Anderson v. Ritterbusch, 22 Okla. 761, 98 Pac. 1002, adopted the reasoning from a Minnesota case, Redwood County v. Winona & St. Peter Land Co., 40 Minn. 512, saying:

"The principle of all the cases is that the taxing power, when acting within its legitimate sphere, is one which knows no stopping place until it has accomplished the purpose for which it exists, viz., the actual enforcement and collection from every lawful object of taxation of its proportionate share of the public burdens; and if prevented by an obstacle, it may return again and again until, the way being clear, the tax is collected."

In Reynolds v. Bowen, supra, it was held: The fact that an assessment was sworn to in due form and accepted by an assessor and approved by the county board, will not relieve property omitted from taxation.

In Thompson v. Tinkcom, 15 Minn, 295, it was held:

"The statement contemplated and required by the act must be true, it must be verified, and it must embrace all the personal property which the individual is required by the act in any capacity to list. It may be true and not be verified, or it may be verified and not be true; there may be a partial statement made, or there may be no attempt to make a statement. If there is entire omission to make any statement or if the statement is defective, in any of its essential requisites. there is not a statement of the personal property 'as provided by this chapter' within the meaning of the section under consideration."

It is a rule announced by the Supreme Court of the United States that a taxpayer has no vested right in the fruits of his false return. Sturgess v. Carter, 114 U. S. 511, 29 L. Ed. 240.

California holds, City & County of San Francisco v. La Societe. etc., 63 Pac. 1016, that the power of the assessor to make another assessment on omitted property is not impaired by the fact that the corporate tax-

payer made a sworn return of its assessment.

Kentucky holds (Com. v. Ky. Heating Co., 195 S. W. 459) items not specifically assessed are presumed omitted.

Oklahoma holds (State ex rel. Glenn v. Crockett, 86 Okla. 124, 206 Pac. 816):

"The county assessor is merely a ministerial officer: he can exercise no judicial function, and he is not an officer from whose action an appeal will lie."

"The officer, too, neglected his duty in accepting the illegal return, but his laches cannot avail the appellant." Bell's Trustee v. City of Lexington, 120 Ky. 199, 85 S. W. 1081.

The opinion herein relies upon Weatherford Milling Co. v. Duncan, 42 Okla. 242, 140 Pac. 1184. That case involves taxes for the years 1903 to 1908, inclusive, all before the enactment of the law of 1909, a part of which as amended is now section 9606, supra, so manifestly it could not possibly affect the interpretation of a law not then upon the statute books. That opinion makes it obvious that the capital stock there attempted to be assessed was the aggregate of the shares of stock and not at all synonymous with the term "moneyed capital, surplus, and undivided profits."

The case of Wolverton Hdw. Co. v. Porter, supra, the only other authority relied upon, cited and quoted from, was bottomed on the Weatherford Milling Co. Case, supra. While the taxes in the Wolverton Case were for the year 1910, the claim purports to be founded upon section 7318, R. L. 1910, now section 9606, C. O. S. 1921, and I think the case shows that both parties as well as the trial court and the learned Commissioner who wrote the opinion interpreted the term "capital stock" therein mentioned to be the shares of stock to be taxable to the company in the aggregate, and I think the theory of the opinion is wholly at variance with the later exhaustive examination of the statutes as construed in Oklahoma Natl. Life Ins. Co., supra. But even in that case the cause was remanded to be tried on its merits for the discovery of property omitted. By the many subsequent interpretations of this statute, I think it evident that the theory of the Wolverton Case has long since been abandoned and that they ought not to be utilized for authority.

For these reasons, I dissent.

RILEY, J. (dissenting from denial of rehearing). I pointed out in my original dissenting opinion that under the law announced in the majority opinion and under the agreed statement of fact, the wrongness of the majority opinion is established to an arithmetical certainty. Ordinarily, whether a decision is right or wrong is a matter of opinion, but herein I think otherwise. The hypothesis for the mathematical syllogism follows:

The agreed fact is that the tax value of this corporation is_____$125,000.00
The only assessed item is for
"Groc Stock" _____ 37,000 00

Balance unassessed value _____ 88,000.00
Motor vehicles otherwise assessed 10,000.00

Balance admitted omitted value__$ 78,000.00

The admitted omitted value is agreed by the parties to be composed of the following items and species of property which are not mentioned in the exhibited assessment sheets:

(1) "Accounts or notes receivable".
(2) "Furniture and fixtures".
(3) "Money on hand".

The accepted rule of law stated in the majority opinion as announced in Re Assessment of Durant National Bank, 107 Okla. 65, 230 Pac. 712, 4th paragraph of syllabus, is:

"If said corporation fails to report any item or species of property of any kind or character owned by it that it is called upon to report to the assessor, and the value thereof, the failure to report said items or species of property thereof is an omission and not an undervaluation of the property of the corporation", etc.

The query in the matter at bar is: Has any item or species of property been omitted from tax assessment? My answer is "Yes." A majority of my associates answer "No".

SWINDALL and CULLISON, JJ., concur.

Note.—See under (1) anno. 11 A. L. R. 913; 32 A. L. R. 88. See "Counties," 15 C. J. §238 p. 546, n. 53; §351, p. 640, n. 34. "Taxation," 37 Cyc. p. 1018, n. 93, 96