WASHBURN WIRE COMPANY *vs.* ZENAS W. BLISS *et al.* BOARD
OF TAX COMMISSIONERS.

DECEMBER 31, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, and Stearns, JJ.

*(1)   Taxation.   Corporate Excess.   Corporations.   Directors.   Stock.*

Maine corporation carrying on business both in this State and in the State of New York, transferred its entire plant and assets in the State of New York to a newly organized New York corporation and received as a consideration therefor the entire capital stock of the corporation and $1,400,000 in bonds. Four of the five directors of the New York company were directors of the Maine company. On the question of the right of the Maine company to a deduction of the value of the New York tangible property from the Maine company's corporate excess under the Tax Act of 1912.

*Held,* that the legal effect of the transfer was not changed by the fact that the Maine corporation owned all of the capital stock of the New York corporation, but by the sale of the New York property the Maine corporation ceased to be the owner of such property and consequently was not entitled to a deduction for the value thereof.

APPEAL from decision of Board of Tax Commissioners under Tax Act of 1912, to Superior Court.   Heard on exceptions of Board of Tax Commissioners and decision of Superior Court reversed.

STEARNS, J.   This cause is before the court on bill of exceptions brought by the respondents, the State Board of Tax Commissioners, whereby exception is taken to a decision of the Superior Court reducing the petitioner's corporate excess tax assessed by said board for the year ending December 31, 1916.

The facts in the case, which are not in dispute, are as follows:   The petitioner, the Washburn Wire Company, is incorporated under the laws of the State of Maine.   It owns no property and carries on no business in that state.   For a number of years prior to 1916 it had carried on the business of manufacturing and selling wire and steel products.   The offices of the company and the principal manufacturing plant were located in East Providence in this State.   The company also operated a branch manufacturing plant in New York City.   Prior to the year 1916, the petitioner was allowed a deduction, from the aggregate value of its capital stock and indebtedness, on account of the value of its plant and other tangible assets situate in New York, in determining the amount of its corporate excess in Rhode Island so that no tax was in fact imposed upon that part of such aggregate value which arose from the ownership of its New York assets.   (Public Laws, 1912, Ch. 769, Secs. 9, 10, 11, Ch. 784, Sec. 3.)

In May, 1916, at the annual meeting of the stockholders of the Washburn Wire Company, a statement by the treasurer of the company was presented to the stockholders the material parts of which are as follows:

"Gentlemen:

As you are aware, we have for some years operated a plant in New York City where we have a considerable investment in real estate, machinery, merchandise and

supplies.  There has been a large and growing expense in connection with this plant by way of taxes imposed by the State and City of New York, and your directors have been considering for some time the reorganization of our corporation so that this expense could be reduced.  After conferring with counsel, it has seemed advisable to organize a separate corporation under the laws of New York to take over the New York plant.  It is proposed to incorporate this New York company with a capital stock of One Thousand Shares, all of which will be issued to and owned by our present company, and also to issue to the present company debenture bonds of the New York company to the extent of One Million Five Hundred Thousand Dollars ($1,500,000.)

"At the completion of this transaction the present company will have sold its New York plant, machinery and other assets there, and will have in its treasury debenture bonds of the New York company amounting to One Million Five Hundred Thousand Dollars, together with all of the capital stock of the New York company, and the New York business will then be run as a subsidiary corporation, rather than as a branch of the present company.  The saving by way of taxes will be considerable, and this company will secure additional advantages under the New York law by reason of the fact that its business there will be operated as a New York corporation and not as a foreign corporation; the laws of that state being particularly favorable to manufacturing corporations organized under its laws."  .  .  .

"The officers have also had prepared a proposed contract transferring the New York plant to the New York corporation, and same is submitted herewith for your approval."

The plan thus proposed was approved by the stockholders and the following vote was passed: "*Resolved*, That the stockholders of the Washburn Wire Company hereby approve the organization of a New York corporation, in accordance with the certificate of incorporation read to this meeting, to take over the assets and business of this company in New York State as of June 1, 1916, subject to

the liabilities there owing as of that date, and that the directors and proper officers of the company be and they are hereby authorized to take such action in the matter as may seem necessary or proper, and as they may be advised by counsel, including the execution of the contract read to this meeting and contained in the statement of the Treasurer hereinbefore recorded, and of any and all other contracts, deeds and agreements as may be necessary to carry the said transfer into effect."

We have quoted at some length from the records of the company as we think they serve to illumine both the purpose and the result sought to be obtained.  The New York corporation, the name of which is "Washburn Wire Company, Inc.", was organized in May, 1916.  The amount of capital with which the corporation was to begin and carry on business was fixed in the certificate of incorporation at $5,000.  The company was authorized to issue not exceeding one thousand shares of capital stock which it was provided should have no nominal or par value.  The board of directors were authorized to have one or more offices, to keep the books of the company within or without the State of New York, but the company was required to always keep at its principal office in New York correct books of account of all its business and transactions; a stockbook containing the name and residence of each stockholder, and showing the number of shares of stock held and the amount paid thereon by each stockholder, which books should be open daily to stockholders and judgment creditors.  By Article V of the certificate of incorporation it was provided that the principal office of the company should be located in the city of Hornell, State of New York.  The certificate of incorporation also provided that the directors for the first year should be five designated persons all but one of whom, viz.: Daniel C. Turner the manager of the New York manufactory, were also directors of the Maine corporation.  The Maine corporation had a board of seven directors, four of whom, as thus appears, were directors in the New York corporation.

The entire plant of the Maine corporation located in New York, including real estate, machinery, merchandise and other assets was sold and transferred to the New York corporation on June 1, 1916, and in consideration therefor the New York corporation issued one thousand shares of its capital stock and approximately one million four hundred thousand dollars of its debenture bonds to the Maine corporation. Subsequent to December 31, 1916, the Maine company filed a return, as of that date, with the board of tax commissioners in this State setting forth its ownership of the capital stock and bonds of the New York company valued at $5,000 and $1,230,189.06, respectively, and claiming that these securities were exempt from taxation or non-taxable in determining its Rhode Island corporate excess. The board of tax commissioners, however, ascertained and assessed the company's Rhode Island corporate excess without allowing any deduction from the aggregate value of its capital stock and indebtedness either on account of these securities or the New York tangible property. The petitioner, the Maine corporation, appealed from this decision to the Superior Court and that court held that through its complete stock ownership in the New York company it was the real owner of the New York corporation and continued to be the real owner of the real estate and tangible personal property located in New York notwithstanding the aforesaid sale and transfer to the New York company; that as tangible property located outside of this State belonging to a corporation doing business in this State can not be taxed by this State, the petitioner was entitled to a deduction of the value of the New York tangible property from the company's corporate excess, as found by the board of tax commissioners. To this decision the State Board of Tax Commissioners duly took exception on the ground that the Washburn Wire Company was not the owner of any real estate or tangible personal property located outside of the State which entitled it to any deduction on its tax, and this exception raises the only question now before this court.

The Tax Act of 1912 (Chap. 769 and amendments, Pub. Laws, 1911–1912), provides that every corporation wherever incorporated, carrying on business for profit in this State, with certain exceptions not material to the consideration of this case, in addition to taxes on its real estate and tangible personal property, shall pay an annual tax "upon the value of that portion of its intangible property hereinafter called its corporate excess." The act (Sec. 11) provides the method by which the value of the corporate excess is to be determined which is substantially as follows:

(1) To the value of the total number of shares outstanding there shall be added as part of the measure of value of the property of such corporation the total value of its indebtedness of certain kinds specified.

(2) In the case of corporations also carrying on business outside of this State, a portion of the value ascertained under Clause 1, *supra*, in the case of manufacturing corporations, is apportioned to this State in such proportion as the fair cash value of their real estate and tangible personal property in this State, on December 31st of each tax year, bears to the fair cash value of their entire real estate and tangible personal property then used in their business.

(3) From the total value ascertained under Clause 1, or in case of corporations also carrying on business outside of this State, from the portion of the value apportioned to this State under Clause 2 there shall be deducted the assessed value of their real estate and tangible personal property located in this State.

Clause 4 provides that the tax board shall also make such allowance for such property as is exempt from taxation or is not taxable in this State by deducting it from the value ascertained as above-mentioned.

Clause 5 is as follows: "The remainder shall constitute the value of the 'corporate excess' for the taxation of said corporation.'"

In ascertaining the corporate excess, in the case before us, the tax commissioners followed the method prescribed by

the tax act and the petitioner admits that a proper valuation was placed on its capital stock and that the proper deductions were made, with the exception that the petitioner claims a deduction also should have been made for the value of the real estate and tangible personal property of the New York corporation.

The question thus raised of the right of petitioner to have such deduction made is to be determined by the provisions of the statute.

The Maine corporation does not claim to be carrying on business in New York or elsewhere outside this State and consequently cannot base its claim for a deduction under Clauses 2 and 3, Sec. 11, *supra*. It must rely then on Clause 4 by which the board is directed to make allowance for such property as "is not taxable in this state." The petitioner claims that it is the owner of the real estate and personal property in New York because it owns all of the capital stock of the New York corporation. If this claim is correct the State can not tax the New York property and does not claim the right to do so. If we accept the claim of the petitioner we reach a conclusion the result of which is unique, namely, that in Rhode Island the Maine corporation is the sole and absolute owner of the New York property, whereas, in New York the New York corporation is the sole and absolute owner of the same property. Each of these corporations is a distinct legal entity which in general and in many respects is regarded by the law as a natural person. The Maine corporation sold and transferred the property in question to the New York corporation to accomplish its own ends and for its own advantages. Prior to the sale the Maine corporation was the owner of the property and as such was allowed a deduction for its value in the tax assessment in this State. When the sale was made it is plain that it was the intent of the parties to change the ownership of the property and that the New York corporation should own and control it. Having made such change in ownership, certainly so far as the State of New

York is concerned, we can see no reason why the State of Rhode Island should be asked to disregard the transaction and hold that, so far as this State is concerned, there had been no change effected. The property can not be the exclusive property of each of two different corporations. We do not think that the legal effect of the transfer is changed by the fact that the Maine corporation owns all of the capital stock. This stock ownership it is true gives to the Maine corporation the power to elect a board of directors and thereby, indirectly; the power to control the management of the New York corporation. The direct control and management of the New York corporation however is vested in the directors of that corporation and the officers elected by them. If these directors legally exercise their discretion in the management of the New York company in a manner unacceptable to the Maine company or a majority of its stockholders, the only redress for the Maine corporation is by the election of new directors in the manner and at the time provided for by the by-laws of the New York corporation. The direct control and management of the New York corporation is vested in the directors of that corporation and the fact that a majority of the board are also for the time being directors of the Maine company does not change their relation to either corporation or alter their power of control over the New York company.

The petitioner, in its brief, calls our particular attention to the following cases: *McCornick & Co.* v. *Bassett,* 49 Utah, 444, and *Commonwealth* v. *Westinghouse Air Brake Co.,* 251 Pa. St. 12. It is unnecessary to discuss the case of *McCornick & Co.* v. *Bassett,* as that is a case of double taxation which the court held was prohibited by the peculiar provisions of the constitution of Utah.

In *Commonwealth* v. *Westinghouse Air Brake Co., supra,* it appears that a capital stock tax was imposed under a Pennsylvania statute (Laws of Penn. 1889, p. 420, No. 332, and its Supplements) which required each corporation carry-

ing on business in that state to pay an annual tax, at a fixed rate, on the actual value of its whole capital stock of all kinds. The defendant, a domestic manufacturing corporation, had its manufacturing plant in said state. During the year in which the tax in question was assessed, the defendant purchased a factory in Wisconsin and another factory in Canada and created two corporations, one in Wisconsin and another in Canada, to carry on the business in these localities. The defendant owned all of the capital stock in each of these corporations.

The court held that the Pennsylvania company held the plants in Wisconsin and Canada through the medium of the stock in the two companies and that the evidence of its ownership was the shares of stock which it held, and "that to all intent and purposes the defendant company owns these plants just as securely as if the legal title was vested in it." That the aggregate value of the property in Wisconsin and Canada should be deducted from the aggregate capital stock upon which the tax had been laid.

In that case it also appears that the defendant company in order to establish business relations with certain foreign corporations purchased a limited amount of their capital stock, that it had nothing to do with the incorporation of the companies, and but little to do with their control and management. The court held that the defendant company was not entitled to a deduction for the value of these shares; that "the defendant simply owns some shares in these corporations. In no proper sense can it be said that a Pennsylvania corporation which owns a few shares of the capital stock of a foreign corporation is thereby made the owner of personal property or real estate permanently located beyond our jurisdiction."

The facts in the above case are not reported in detail and it is not clear from the opinion of the court what the decision would have been if the Pennsylvania company had not owned the entire capital stock but only a majority, sufficient to give it control. The decision of the court seems to us to be somewhat inconsistent.

It is true, as argued by the petitioner, that in many cases the law regards the substance and not the form, and the courts, very properly in certain cases, look beyond the corporate entity to the individuals who are interested in the corporation. But we see no sufficient reason for the application of this principle in the case at bar. The petitioner for its own advantage claims in one jurisdiction the full benefit and legal effect of the corporate entity, and in another jurisdiction, likewise for its own advantage, it asks that the act of incorporation be disregarded. We are of the opinion that the Maine corporation by the sale and transfer of the New York property ceased to be the owner of said property and consequently is not entitled to a deduction for the value thereof.

The exception of the respondent board of tax commissioners is sustained, the decision of the Superior Court, entered on the 8th day of June, 1918, is reversed and the case is remitted to the Superior Court with direction to confirm the assessment as made by said board of tax commissioners.

*Swan & Keeney,* for petitioner.

*Herbert A. Rice, Attorney General,* for respondents.