## R. C. JONES COTTON CO. v. STATE.

No. 17853. Opinion Filed Nov. 5, 1929.

Wilcox & Swank and Rainey, Flynn, Green & Anderson, for plaintiff in error.

C. C. Suman, for the State.

ANDREWS, J.  The parties will be referred to for convenience as they appeared in the trial court; the state of Oklahoma, plaintiff in the court below, defendant in error and cross-plaintiff in error, will be called plaintiff, the R. C. Jones Cotton Company, defendant in the court below, plaintiff in error and cross-defendant in error, will be called defendant.

The finding of the trial court contains a statement of facts disclosed by the record which we think is substantially correct and which we quote, as follows:

"This is an action which was begun before the county treasurer of Payne county, Okla., on the 13th day of July, 1925, by J. H. Brown, tax ferret of Payne county, Okla., by filing a report with the county treasurer of Payne county, Okla., to the effect that he, as such tax ferret, has discovered that the R. C. Jones Cotton Company of Cushing, Okla., was the owner of certain property consisting of moneyed capital, surplus and undivided profits, of the fair cash value of $100,000 which property was subject to taxation in Payne county, Okla., for the years 1908 to 1924, inclusive. And which property was not listed nor assessed, and not extended on the tax rolls of said county for any of said years.  That thereupon, the county treasurer of Payne county issued a notice to the R. C. Jones Cotton Company informing said company that the said J. H. Brown, tax ferret, had filed in the county treasurer's office of said county an information to the effect that said R. C. Jones Cotton Company was the owner of personal property consisting of moneyed capital, surplus, and undivided profits, for the fair cash value of $100,000 subject to taxation in Payne county, for the years 1908 to 1924, inclusive, and not assessed, and not extended on the tax rolls of said county.

"That therefore, on the 1st day of September, 1925, said R. C. Jones Cotton Company filed before the county treasurer of said county, certain objections and exceptions to the proposed assessment of said property, and that it objected to the proposed assessment of said J. H. Brown, tax ferret, and it specifically denied that it omitted any property of any character, or description, either real, personal or mixed which it owned, and which was subject to taxation in Payne county, Okla., from the 1st day of January for the years 1908 to 1924, inclusive, from taxation, and averred that it made its returns of all of its property, legally assessable to said corporation to the county assessor of Payne county, Okla., in the manner and form as required by law, and in manner and form as required by the said county assessor, and had paid all of the taxes assessed against said property for each of said years, and denied specifically each and every allegation of the tax ferret contained in his information filed herein, relative to the omission of property by it for taxation for the years above set out.

"That thereafter, on the 20th day of November, 1925, said cause came on for hearing before the county treasurer, who having heard the evidence, entered an order finding that said R. C. Jones Cotton Company is, and was, during the years 1911 to 1924, inclusive, an Oklahoma corporation, having its principal place of business in the city of Cushing, Payne county, Okla., and was in possession of the property hereinafter set out, on the first day of the fiscal tax years on each of the tax years hereinafter mentioned, and that the same has not been assessed for taxation, but was wholly omitted therefrom, and that the same was of the fair cash value as follows:  (List of valuations omitted as immaterial to this decision) and ordered and adjudged that an assessment be prepared on the tax rolls of said county against the R. C. Jones Cotton Company, as in the city of Cushing, in the said county of the respective amounts for the years above mentioned for the capital, sur-

plus, and undivided profits theretofore omitted from taxation, and that said respective assessments bear the penal and statutory interest from this date, at the rate of 15 per cent. per annum.

"And thereafter, on the 23rd day of November, 1925, said R. C. Jones Cotton Company filed with the county treasurer, the tax ferret, and board of county commissioners, of Payne county, Okla., a notice of appeal appealing said cause to the county court of Payne county, Okla., as provided by law, and the records show that the appeal was completed on the 28th day of November, 1925, by causing to be filed an appeal bond for the sum of $1,000, which was delivered and approved by the county treasurer.

"On the 27th day of November, 1925, the state of Oklahoma filed a cross-appeal, service of notice thereof was served on the R. C. Jones Cotton Company on the 28th day of November, 1925.

"All of the papers in the case was transmitted by M. E. Basil, county treasurer of Payne county, Okla., to the office of the court clerk, on the 4th day of December, 1925, and that, accordingly, said cause came on for trial in said court to be tried de novo before the court, and without intervention of the jury.

"That thereafter, to wit: on the — day of July, 1926, the J. H. Bellis Cotton Company, by its motion duly filed, asked to be made a party defendant to this action, which was by the court sustained, and the J. H. Bellis Cotton Company made one of the parties defendant.

"Now, on this 15th day of June, 1926, this cause coming on regularly to be heard as per assignment, and the state being represented by the county attorney, C. C. Suman, and R. W. Stoutz, special counsel, and the defendant being represented by Wilcox & Swank, the state presented its evidence and rested. The defendant demurred to the evidence of the state, and asked that the case be dismissed, which demurrer was overruled and motion denied, and thereupon the defendant introduced its evidence and rested. The court took the matter under advisement and allowed the plaintiff to submit a brief in ten days, and the defendant was allowed ten days in which to file a brief in reply. And now, on this 25th day of August, 1926, this matter being fully before the court, the parties being present as heretofore, and the court examining the evidence as produced by the parties, both plaintiff and defendant, and being fully advised in the matter, finds the facts to be as follows:

## "Finding of Facts.

"That the R. C. Jones Cotton Company is, and was at the time herein mentioned, a corporation legally organized for profit and authorized to do business in the state of Oklahoma, and located in the city of Cushing, Payne county, Okla.

"The court further finds that the state dismisses as to the years 1908, 1909, and 1910, this last year being the date when the corporation was re-organized in the name of the R. C. Jones Cotton Company, and recapitalized in the sum of $75,000.

"The plaintiff complains that all of the years thereafter, to 1924, inclusive, the R. C. Jones Cotton Company failed to make a corporate return of all of its property, real, personal and mixed, to the tax assessor of Payne county, Okla., for the purposes of taxation, and the court finds that the respondent at no time, during any of the years from 1911 to 1924, inclusive, made returns of its corporation property to the tax assessor of Payne county, as provided for by law.

"The court further finds that this suit is based upon the activities of J. H. Brown, the duly appointed, qualified, and acting tax ferret of Payne county, Okla., who claims that he has discovered certain properties belonging to the said R. C. Jones Cotton Company, which have been undervalued, and omitted from the tax rolls of Payne county, and these omissions, as above stated, are the basis of this action. As a matter of fact, there has been no return made to the assessor of Payne county by the said R. C. Jones Cotton Company, as a corporation, listing its capital, surplus, and undivided profits for taxation purposes. But the court does find, however, that the defendant owned and operated gin properties in Payne county, and in other counties of this state, and that these gin properties were listed and placed on the tax rolls of the respective counties in which these properties were located. And that all of the taxes assessed against the same were paid by R. C. Jones Cotton Company, or by someone representing the company in the counties where the gin properties were respectively located.

"The court further finds that a great number of these properties, the title of which the records disclose were given for taxation in the name of other firms, corporations, and individuals than the R. C. Jones Cotton Company; however, the defendant claimed ownership, possession and operated said cotton gins and properties even though the legal title was not in the name of the respondent herein, and that it paid the taxes thereon.

"The court found that the state had made strenuous effort in support of its complaint to ascertain and determine all of the taxable wealth of the R. C. Jones Cotton Company, and this effort met with little success as far as definiteness and actual figures were concerned. Hence, the court is handicapped in forming a basis of tangible wealth, upon which to base a value for taxation purposes.

"The court is unable to understand why a corporation with a paid-up capital stock of $75,000, and a going concern, would so keep its books; and conduct its business and keep the record title of its property so entwined and interwoven with the title and business of affiliated concerns and individuals, so that the capital, stock, earnings, surplus and undivided profits are scarcely discernable.

"The court finds that this corporation had no bank account, no balance sheets, and no checks from which can be ascertained and determined the amount of working capital surplus and earnings; with the exceptions, however, of the minutes of the corporation wherein certain dividends in certain years were authorized to be paid. And in the year 1921, on the statement filed by the R. C. Jones Cotton Company, with the Corporation Commission, filed on the 5th day of July, 1912, the statement shows that on that date, the corporation returned the sum of $8,126.35 to the reserve and surplus. And that at the same time a dividend of 20 per cent. was declared and paid.

"The records do not disclose any other amounts being retired to the reserve fund, except as indicated by the minutes in 1923, when 50 per cent. of the earnings were directed to be added to the surplus account and the state did not or was unable to prove the amount of money the 50 per cent. represented. On the other hand, it was denied by the respondent that any amount had been paid.

"The court further finds this corporation was duly officered as required by law, but the officers so named, as president and secretary, were in absolute ignorance of the condition of the company at any time, and that they were mere figure-heads occupying their respective positions; J. H. Bellis, the evidence disclosed, being the only moving factor, and manager of the corporation.

"The court found that in the management of this corporation, there was much other capital, or money involved besides the capital stock. The court is unable to say whether this was money derived from surplus, undivided profits, or borrowed money. The court cannot reconcile conditions of this kind.

"The trial balance sheet, or working sheet, as prepared by the witness, Patterson, while making some disclosures damaging to the defense, they were not of sufficient authenticity to give much weight or accuracy to the amounts therein stated in the various items listed on said working sheet.

"The court further finds that the earnings and profits of the defendant corporation was sufficient at all times to sustain the contentions that the capital stock of said corportions was never impaired. If at any time

the business was conducted at a loss, that would not be sufficient reason to withhold the capital, or any part thereof from the county assessor, for taxation purposes.

"The state went at great length to mention all items of value which should be added to the capital stock, such as earning capacity, good will, and other elements of value, which they asked to be considered in arriving, or determining, the corporate wealth of said corporation'

—from which finding the trial court made its conclusions of law, which we quote as follows:

"As a matter of law, by authority of section 9606, Comp. Okla. Stats. 1921, 'A corporation organized, assessed and doing business in this state for profit, other than public service corporations, assessed by the State Board of Equalization, other than national banks, state banks, or trust companies, shall be assessed upon the value of their moneyed capital, surplus, and undivided profits, as the same exists on the 1st day of January each year, in the county, town, district, or city in which said corporation is located, less the assessed valuation of any real estate located in this state owned by such corporation, and listed separately in the name of such corporation.'

"The court has found that the respondent, R. C. Jones Cotton Company, at no time during the period from 1911 to 1924, inclusive, returned to the county assessor of Payne county, Okla., any of its moneyed capital, undivided profits, and surplus, as provided by law.

"The court further found that this is an attempt of J. H. Brown, tax ferret, of Payne county, Okla., to place on the tax rolls omitted property, and undervalued property and newly discovered property, belonging to the R. C. Jones Cotton Company for taxation purposes. The validity of the tax ferret law, and the acts of the said J. H. Brown, as such tax ferret of Payne county, is attacked by the defendant and recites numerous authorities in support of its contention.

"With reference to the tax ferret, it is held by this court that his acts and authority by reason of his contract with the county commissioners of Payne county, as provided in section 9798, are valid only so far as it applies to property omitted from taxation, and does not confer the power or authority to revalue, or reassess, property which has already been assessed.

"In this connection, the court finds that the weight of authorties hold that where all of the capital stock of a private corporation, operating for profit, has been sold and invested in other tangible property, real or personal, that has been listed for taxation, and the taxes paid thereon, the tax ferret

216

is without power to re-assess, or revalue the property so assessed.

"In this case, it does appear that all of the capital stock of the R. C. Jones Cotton Company had been sold and the money invested in ginning properties, real and personal, necessary to carry on the cotton ginning business, and it is conceded that all taxes on this property in whatever county located has been paid.

"The court further holds that if said corporation fails to report any item or species of property of any kind or character, owned by it, which by law it should report to the assessor, and the value thereof, the failure to report said items or species of property thereof, is an omission and not an undervaluation of the entire property of the corporation. An item, or species of property, which the corporation failed or refused to report, may be assessed as omitted property, under sections 9597 or 9798, Complied Statutes 1921.

"In this case, the court finds the moneyed capital of this defendant to be clearly undervalued, but a tax ferret is without authority to reasses or revalue the items of property so undervalued. And from this conclusion, the court holds that the value of capital stock need not necessarily be further inquired into as to whether it is worth more or less than the par value of said stock.

"This disposed of the item of the value of the capital stock, and observations of the law and the citations as given by the eminent counsel for the tax ferret need not be further considered.

"The court further finds, as a matter of law, the surplus and undivided profits of the R. C. Jones Cotton Company comes within the jurisdiction and authority of the tax ferret, if any omission to list the same has been found. In this case, the court found that on various years, the said R. C. Jones Cotton Company had paid dividends as set out in plaintiff's brief, page 7. These items of dividends were disclosed by the minutes of the said corporation, and must be admitted as true. Again, in May, 1923, the minutes show that 60 per cent. of the earnings were directed to be placed in the surplus account. The court is unable to determine and it was not proven by the state, the exact amount of the undivided profits on hand the first of January that year, from which 50 per cent. may be placed to the surplus account.

"The above and foregoing is the statement, finding of facts, and conclusions of law, based upon the evidence and the valuable and exhaustive briefs submitted by both parties hereto.

"We cannot say how much of defendant's capital stock was invested in raw material, but whatever the amount was, the raw material would not be subject to retaxation if the tax on the capital stock was paid.

"The record does not disclose that, at any time, the $8,126.35 surplus was ever removed from the surplus account, hence, it is fair to conclude that it remained in the surplus account until the end of the year 1924, and this amount, together with the undivided profits from which the dividends were paid, is by the court found to be the amount of omitted property belonging to the R. C. Jones Cotton Company omitted from the tax rolls of Payne county, Okla.

"The court is forced to the conclusion that the remedy for the state to have undervalued property reassessed or revalued is not authorized by the tax ferret law."

—and rendered judgment, as follows:

"It is therefore ordered, adjudged, and decreed that the respondent was possessed of property hereinafter mentioned on the first day of the fiscal tax year of each of the tax years herein mentioned, and that the amounts set out in schedule below is omitted property, and that the same has not been assessed for taxation, but was wholly omitted, and that the same was of the fair cash value as follows: (List of valuations omitted as immaterial).

"It is therefore ordered and adjudged that an assessment be spread on the tax rolls of the county, as against the respondent property, as in the city of Cushing in said county of the respective amounts and for the years hereinabove mentioned, for undivided profits and surplus, heretofore omitted from taxation; and that said respective assessments bear the penal and statutory interest from this date, as provided by law.

"To this decree and each finding of fact and of law, the state of Oklahoma, and the defendants each separately and severally reserve exceptions so far as said rulings are adverse to exceptants."

From this judgment both parties appealed.

This court, in State v. Cushing Grocery Co., 135 Okla. 186, 274 Pac. 876, after consideration and discussion of the statutes and decisions of this court with reference thereto, held:

"Where a corporation has caused all of its assets to be placed on the tax rolls and has paid taxes thereon and an attempt is made to assess its moneyed capital, surplus, and undivided profits as omitted property, under the provision of the tax ferret statute, such attempt is illegal and not warranted by the statutes and the decisions of this court construing the same."

In view of the extended discussion in that case of the law applicable thereto, we

do not think it necessary to discuss the reason for the rule announced therein.

This is an attempt to assess moneyed capital, surplus, and undivided profits of a corporation as omitted property under the provisions of the tax ferret statute. We are first confronted with a determination of whether or not the corporation has caused its assets to be placed on the tax rolls and has paid the taxes thereon.

An examination of the evidence in this case discloses that the finding of the trial court, as follows:

"* * * All of the capital stock of the R. C. Jones Cotton Company had been sold and the money invested in ginning properties, real and personal, necessary to carry on the cotton ginning business, and it is conceded that all taxes on this property in whatever county located has been paid"

—is sustained by the evidence. (C. M. 320) The evidence clearly shows that the entire proceeds of the sale of the capital stock was invested in tangible property. There is no competent evidence to the contrary. There is no dispute as to the payment of the taxes thereon for each of the years in question.

Plaintiff contends that the valuation placed on this property by defendant is less than the value of the moneyed capital, surplus, and undivided profits, and that therefore there is an omission. This contention has been settled by the rule announced in State v. Cushing Grocery Co., supra, wherein it was held that such a condition amounts to an undervaluation and not an omission and one over which the tax ferret has no jurisdiction.

The finding of the trial court as follows:

"* * * A great number of these properties, the title of which the records disclose were given for taxation purposes in the name of other firms, corporations, and individuals than the R. C. Jones Cotton Company; however, the defendant claimed ownership, possession and operated said cotton gins and properties even though the legal title was not in the name of the respondent herein, and that it paid the taxes thereon." (C.-M. 316.)

—is sustained by the evidence. The plaintiff contends that under such a condition there can be no deduction of the value thereof from the value of the moneyed capital, surplus, and undivided profits, and places great stress on the wording of the statute for assessment of corporations. Section 9606, C. O. S. 1921. It contends that the language thereof," * * * less the assessed valuation of any real estate located in this state owned by such corporation and listed separately in the name of such corporations," precludes the deduction of the assessed valuation of real estate not listed in the name of the corporation. We do not think it necessary to determine that question here. If the real estate in fact belonged to the corporation and the corporation paid the tax on it, then it cannot be said to be omitted property, and not being omitted property, it cannot be placed on the tax rolls in this procedure. Nor can the assessed value thereof be assessed herein as omitted "moneyed capital, surplus, and undivided profits." The property itself has not been omitted from taxation. The tax thereon has been paid. The assessed value thereof, constituting a portion of the value of the moneyed capital, surplus, and undivided profits, has not been omitted from taxation. The tax thereon has been paid. We cannot agree with plaintiff in its contention.

Section 9606, Id., provides for an assessment on the value of the moneyed capital, surplus, and undivided profits of a corporation. The record shows no proof as to value in this case. The taxing officials and the officers of this corporation were on the witness stand. They, if anyone, knew the value, yet this record discloses that at no time was any witness asked the value of this property.

The fact that the capital was fixed at $75,000 did not show that to be the value of the moneyed capital, surplus, and undivided profits. It is well known that corporations pay a commission for the sale of stock. Can it be said that the moneyed capital of a corporation with stock sales to the amount of $75,000 is of the value of $75,000 when a commission has been paid for the sale of the stock? Certainly not. The value would not be in excess of the net amount derived from the sale of the stock. This court knows of corporations organized with large capital all of which has been sold and the present value of the moneyed capital, surplus, and undivided profits is scarcely anything. Let us assume a case for illustration. A corporation is organized with an authorized capital stock of $75,000, all of which has been sold. Fifty thousand dollars is paid for a patent right and $25,000 is invested in building and machinery useful only for the manufacture of the patented article. Manufacture of the patented article is enjoined as an infringement. The real estate is worth $5,000 and the junk value of the machinery

is $5,000. There is no surplus and no undivided profits. What is the value of the moneyed capital? It cannot be in excess of $10,000.

The valuation of the moneyed capital, surplus, and undivided profits of a corporation is capable of proof the same as the value of other property and proof is required to determine its value. The ordinary rules for the determination of value apply. There was no proof and no offer of proof as to the value of the moneyed capital, surplus, and undivided profits in this case.

It is contended that the value of the moneyed capital must have been equal to the par value of the stock for the reason that the company paid dividends almost every year. The fact that the company paid dividends does not determine the value of the moneyed capital. It tends to prove the value of the stock, but the value of the stock and the value of the working capital are entirely distinct. The corporation which by careful business methods succeeds in producing a profit each year which is distributed to the stockholders thereby increases the value of the stock, and the value of the stock is determined largely by the dividends earned and paid. Many people will pay a substantial bonus for stocks paying large dividends even though the capital assets are small in value. Another corporation, having large capital assets and producing no profits, finds its stock selling at considerably less than par.

Our Legislature has seen fit to tax banks on the value of the stock, but it has not applied that rule to other corporations, and they are taxed on the value of the moneyed capital, surplus, and undivided profits.

There was evidence to sustain the finding of the trial court that $8,126.35 was retired to a surplus in 1921, and the trial court concluded therefrom that this surplus remained until the end of the year 1924. The record shows that the corporation sustained a loss in 1914 of about $35,000. We cannot follow the reasoning of the trial court that this surplus must have continued to 1924, in the face of proof of their loss. Certainly the loss in 1914 absorbed the surplus. Nor can we conclude that this surplus continued at all. It was set aside May 31, 1912, but there is nothing in the record that tends to show that it was not lost before the next date for assessment. It must be kept in mind that this corporation was engaged in the buying and selling of cotton, the value of which fluctuated rapidly. The fact that this corporation had a surplus in May, 1912, is no evidence that that surplus existed on the next date for assessment. It may have existed, and it may not have existed. Attention is called to the fact that a competent witness testified that all of the property of this corporation existing on the various dates for assessment was assessed and the taxes paid.

Numerous dividends were declared and paid, but the record thereof is that these were all declared in the summer. There is no evidence that any of the profits so disposed of existed on the date fixed by law for assessment. The evidence shows that defendant made or lost large sums of money from speculation in cotton. Unless the profits existed at the time fixed for assessment, it would not be taxable. There is no evidence showing when these profits were acquired. The fact that dividends were declared in June is no evidence that profits existed in January. There might be a loss in January and a profit in June, and there might be a loss in June and a profit in January. The trial court took the profits shown in the summer and found that these profits existed in January. That finding can be sustained on no theory.

Take, for instance, a company which does business on the calendar year basis; it opens its books on the first day of January and closes them on the last day of December; it may have enormous earnings, yet when it declares its dividends on the last day of December and disburses the same to the stockholders, the company does not have them on the next day, and it would certainly be wrong to the corporation to assess it for ad valorem taxation purposes with the additional amount of these disbursed earnings. Yet the company has had earnings and declared and paid dividends. From this we say the conclusion is irresistible that the mere making of a profit or payment of a dividend is not of itself evidence of surplus and undivided profits upon which to tax the corporation.

If the profits accrued regularly during the season from September until May, only a portion thereof would have accrued by January 1st. What was that portion? The trial court did not even attempt to apportion the same, but found that the entire profits for the season accrued prior to and were on hand on the date for assessment. There

is nothing in the evidence to sustain such a finding.

The trial court found:

"* * * That the state had made strenuous efforts in support of its complaint to ascertain and determine all of the taxable wealth of the R. C. Jones Cotton Company, and this effort met with little success as far as definiteness and actual figures were concerned. Hence, the court is handicapped in forming a basis of tangible wealth, upon which to base a value for taxation purposes." (C.-M. 316.)

With this finding we agree.

This proceeding, instead of being one to place on the tax rolls omitted property discovered by the tax ferret, as provided by law, appears to be one to discover whether or not there was omitted property.

The burden was on the plaintiff. In Re-Daniels' Omitted Property, 108 Okla. 195, 235 Pac. 543, it was said:

"The very purpose of employing a tax ferret is, as the name indicates, to 'ferret' out something definite and tangible. If a taxpayer can be made to prove his innocence on such an indefinite charge as this, we would hardly need a ferret. If we were satisfied with the justice of such a rule and required the tax ferret to produce no more definite information than this in order to proceed, we need only to have a law requiring all persons to annually subject themselves to a quasi court of inquiry before the county treasurer and thereby save the county the fees paid the tax ferret.

"The apparent difficulty in this case easily disappears when we clearly understand the question being tried. This question was the same before the county court as it was before the treasurer. It is a compound one and may be thus stated: Did the taxpayer, in the years named, own the personal property described and of the value stated, and did the assessor omit placing it upon the tax rolls? The state affirmed the facts stated in the question and the taxpayer denied them. The state and not the taxpayer sought affirmative relief. There is no presumption of law that the property had been wrongfully omitted by the assessor, and it is, therefore, elementary that the burden of proof was upon him who so affirmed and sought relief, and that is the state."

The plaintiff failed to sustain the burden placed upon it.

This court has often had occasion to say that a party shall not be required by the courts of this state to pay out his money unless his obligation to pay the same is based upon reasonably certain evidence, and,

emphasizing this rule, has said that neither the courts nor the juries of this state shall cause a man to pay out his money upon guess work, conjecture, speculation or probabilities, and has said in no uncertain terms thas this is a part of the fundamental law of the state. One of the earliest pronouncements to that effect is found in the case of Derr Construction Co. v. Gelruth, 39 Okla. 538, 120 Pac. 253, wherein this court said:

"When a party is mulcted in damages in a court, it must not be upon conjecture or a judicial guess, but upon evidence that is reasonably certain, by a verdict of a jury, under a correct exposition of the rules of law pertaining to the issue.

"Beginning with Magna Charta, the rule has obtained that no person shall be deprived of life, liberty or property without due process of law (section 7, art. 2. Constitution). This provision, transplanted to this country, appears not only in the federal Constitution, but also in every state Constitution. Likewise, beginning with the same great charter, the rule that courts shall be open to every person and speedy and certain remedy afforded for every wrong, etc. (section 6, art. 2, Constitution), and the right of trial by jury (section 19, art. 2, Constitution) have been transmitted to us. A remedy is certain when it is exercised under law that is certain, applied with equal certainty not only in favor of the plaintiff, but also the defendant. Juris, under these constitutional provisions, unless such right is waived, determine all controverted questions of fact, and when findings are made under issues without evidence, such is erroneous."

In Spaulding Mfg. Co. v. Holiday, 32 Okla. 823, 124 Pac. 35, paragraph 2 of the syllabus, this court said:

"A verdict based upon conjecture, and not upon evidence, should be set aside."

In Ingram v. Dunning, 60 Okla. 233, 159 Pac. 927, in the second paragraph of the syllabus, the court said:

"Where the verdict of the jury is not sustained by sufficient evidence, or is based upon conjecture, it is the imperative duty of the court upon timely motion to set it aside and grant a new trial."

In State v. Lonewolf, 63 Okla. 166, 163 Pac. 532, this court said:

"Neither should a verdict, arrived at as a result of guesswork, be permitted to stand."

In Kansas City Southern Ry. Co. v. Langley, 62 Okla. 49, 160 Pac. 451, in the second paragraph of the syllabus, the court said:

"A verdict, unsupported by evidence, and based upon conjecture, cannot be upheld."

In Kansas City Southern Ry. Co. v. Henderson, 54 Okla. 320, 153 Pac. 872, this court said:

"To sustain the verdict in this case, it must be held that the jury, in the absence of evidence in regard thereto, could legally conjecture or assume necessary controlling facts to support their verdict, that live sparks could be and were carried from the engine to the barn—a distance 230 feet—and that the wind was sufficiently high to so carry them. Such conjecture or assumption cannot possibly be indulged in by the jury."

"'A verdict evidently found upon mere conjecture of possibilities or probabilities, however reasonable, will not be permitted to stand.'"

In Bokoshe Smokeless Coal Co. v. Bray, 55 Okla. 446, 155 Pac. 226, this court in the first and second paragraphs of the syllabus said:

"Only such actual damages may be recovered as are established by the proof of facts from which they may be rationally inferred with reasonable certainty; and substantial, competent evidence of the facts which constitute the cause of action is indispensable to the maintenance of a verdict. Conjecture is an unjust and unsound basis for a verdict, and speculative, remote or contingent damages cannot form the basis of a lawful judgment. Juries may not legally guess the money out of one litigant's pocket into that of another."

"The estimates, speculations or conjectures of witnesses, unfounded in the knowledge of actual facts from which the amount of damages could have been inferred with reasonable certainty, will no more sustain a judgment than the conjecture of a jury."

As further illustration of the extent and force of the foregoing rules as applied by this court, we quote from paragraph 2 of the syllabus of Cain v. King, 66 Okla. 249, 168 Pac. 799, as follows:

"In the trial of an action upon an account a requested instruction that: 'If the jury from the evidence are unable to say that the defendant is indebted to plaintiff for a definite sum, then the jury should find for the defendant,' correctly states the law, and the refusal to give such instruction is reversible error."

The trial court found that:

"* * * In the management of this corporation, there was much other capital, or money involved, besides the capital stock. The court is unable to say whether this was money derived from surplus, undivided prof-

its, or borrowed money. The court cannot reconcile conditions of this kind."

This record showed that defendant arranged with local banks to furnish money for the purchase of cotton, drawing drafts, accompanied by bills of lading, on defendant therefor, and that its purchase of cotton was almost entirely financed by this method of borrowing money. If this cotton or the borrowed money was on hand at the date fixed by law for assessment of property, then it should have been returned for taxation. If the cotton was bought and sold, or the money borrowed and repaid, either prior or subsequent to that date, then it was not properly assessable.

The burden was on the plaintiff to show taxable property on the date fixed for assessment. There was an absolute failure to show ownership of any cotton or any borrowed money on that date.

To make ourselves clear, let us examine a typical instance of business. A farmer in March borrows $100 from a bank to make a crop. He raises a bale of cotton, sells it in November, and pays the note in December. He has had both cotton and money during the year, but he has neither on the 1st day of January. He has on that date nothing that is assessable.

Another instance: A cotton company, having its moneyed capital invested in gin property, in August arranges with a local bank to honor its drafts drawn for the purchase of cotton; the bank does so, and the cotton company from time to time sells the cotton, repaying the loans from the proceeds of the sale. On the 31st day of December the last of the cotton is sold and the drafts are all paid, leaving no profit to the company and no money or cotton on hand. Can the company be assessed because it has bought and sold cotton? Not under our taxation statutes.

It is immaterial how much business a taxpayer does during any year or how much property he has on hand during the year. The question is: How much does he have on the date provided by law for the assessment thereof?

The judgment of the trial court decrees assessments for the years 1911 to 1924. During the first of the period section 7318, R. L. 1910, was in force. That section provided for an assessment on the net value of the moneyed capital, surplus, and undivided profits as the same existed on the 1st day of March of each year. That section was

amended by S. L. 1915, sec. 4, art. 1, chapter 107, to change the date of assessment to January 1st. It was again amended by S. L. 1919, chapter 203, sec. 1, to provide for an assessment on the **value.**

This cause was tried without regard to these changes. There was no effort made to differentiate between the evidence offered for one year and another. In fact there was nothing to distinguish between the years for which the evidence was offered.

For more than half of the period the corporation was taxable only on the net value, yet there was no attempt to show the net value, and when evidence was offered for the later years, it conformed exactly to that offered for prior years. Either the plaintiff was in error in the first period or in the later period. It could not have been correct in both instances. The plaintiff sought to tax profits shown to have been distributed in the summer without any regard to the change in the date for assessment.

In the language of the cases cited, this court will not uphold a judgment "unsupported by evidence and based on conjecture."

As was said in State v. Cushing Grocery Co., supra, section 9606, Id., must be construed with other applicable taxing provisions. When so construed, corporations such as this one should be assessed on the value of their moneyed capital, surplus, and undivided profits as it existed on the date fixed by law for assessment thereof, and from which value there should be deducted the assessed value of its assets otherwise taxed.

In determining this value there should be included money actually invested in the business and derived from the sale of capital stock, debentures or bonds, surplus accumulated from the operation of the property and set aside for that purpose, and profits earned and not set aside as surplus or divided among the stockholders.

In making deduction of the value of assets otherwise taxed there should be deducted real estate and personalty owned by the corporation, paid for from the corporate assets, and on which the corporation is chargeable with the tax, including such property as is taxable on an ad valorem basis, mortgage tax, gross production tax, and all other taxes authorized in lieu of ad valorem taxation.

An examination of the records in this case discloses that there was no evidence offered which in any way tended to prove the value of the moneyed capital, surplus, and undivided profits as it existed on the various dates fixed by law for the assessment thereof.

This court is, therefore, unable to state that the value of the moneyed capital, surplus, and undivided profits of this corporation, as it existed on the various dates fixed by law for the assessment thereof, was in excess of the assessed valuation of the assets of the corporation otherwise taxed on the same date for the same year.

This court is unable to state that this corporation owned any property on the various dates for assessment which has been omitted from assessment and on which the tax has not been paid. The record shows no such property.

There was a failure of proof on the part of the state. The burden was upon the state, and the state failed to sustain that burden. After finding that the state had "* * * met with little success as far as definiteness and actual figures were concerned," the trial court was in error in proceeding to render a judgment against the defendant.

There was no evidence of omitted property. There is ample provision contained in section 9597, C. O. S. 1921, to reach undervalued property.

The cause is reversed and remanded to the county court, with instructions to dismiss the action.

MASON, C. J., LESTER, V. C. J., and HUNT, CLARK, HEFNER, CULLISON, and SWINDALL, JJ., concur. RILEY, J., dissents.

---

RILEY, J. (dissenting). I dissent to the decision and opinion of the majority.

There was no compliance or attempted compliance with the provision of the taxing statute on the part of the R. C. Jones Cotton Company. The lower court found that the Cotton Company at no time from the year 1911 to 1924, inclusive, made a return of its corporate property as provided by law. There is an abundance of evidence to support the findings. The lower court found that an unascertainable amount of the corporation's capital was invested in raw material (personal property). There was no effort below to tax personal property eo nomine, for it was the view that such property value would be included in the assessment upon capital stock.

The effect of the majority opinion is that,

where any part of the property of such a corporation finds its way upon the tax rolls, then the corporation cannot be back-taxed under procedure for taxing omitted property. Such a holding is violative of the principle announced in Re Assessment of Durant National Bank, 107 Okla. 65, 230 Pac. 712:

"The general rule applicable to corporations, which under the law are assessed upon their moneyed capital, surplus, etc., is, if said corporation fails to report any item or specie of property of any kind or character owned by it that it is called upon to report to the assessor, and the value thereof, the failure to report said items or specie of property thereof is an omission, and not an under-valuation of the property of the corporation, and the item or specie of property which the corporation failed or refused to report, may be assessed as omitted property either under section 9597, or 9798, C. O. S. 1921."

It is contrary to In re Okla. Natl. Life Ins. Co., 68 Okla. 219, 173 Pac. 376.

Herein the Jones Cotton Company was called upon to report eight different items and species of property by express provisions of statute (section 9962, C. O. S. 1921, and section 9606, C. O. S. 1921). It reported none of them. Yet this court holds there was no omission, but an undervaluation, if anything. Such a conclusion, in my judgment, renders nugatory the desire of the sovereign to tax such corporations upon the value of their moneyed capital, surplus and undivided profits less the assessed value of tangible property owned by such corporation located in this state and listed separately in its name.

The majority opinion says:

"If the real estate in fact belonged to the corporation and the corporation paid the tax on it, then it cannot be omitted property, and not being omitted property it cannot be placed on the tax rolls in this procedure, nor can the assessed value thereof be assessed herein as omitted 'moneyed capital, surplus and undivided profits.'"

It should be borne in mind that this is not an effort to assess any tangible property—real or personal—but an effort to assess that directed to be assessed by the law, the corporate value, and to permit deductions allowable by law for tangible property otherwise assessed.

The majority opinion takes the view that there was no proof of value of moneyed capital, etc. I think there was proof. It was an admitted fact that there was no return for corporate assessment as provided by law—consequently an omission in toto of the eight items to be considered in such an assessment. Moreover, the record abounds with proof of dividends declared by the corporation, and of returns of value invested, made to the Corporation Commission as a basis for rates to be charged in ginning and of value fixed as a basis for federal income tax. So that we could be justified in concluding there was some value not assessed as provided by law.

The court below found, by reason of profits shown, that the original investment of $75,000 derived from sale of capital stock was not impaired. I think that reasonable proof of value. However, I would not object to a remanding of the cause for a specific finding of value, but with such a showing I think it destructive of rights of the state to dismiss the cause. Herein, under the evidence, is disclosed a corporation that seeks to avoid assessment for taxes upon its property. Proof shows the corporation has not only failed to return its corporate property for assessment, but even has concealed its deductible offsets by allowing the same to be held in the name of other persons, firms, and corporations. As I view it, the corporation has displayed its contempt of the sovereign's desire to force it to bear its just part of governmental expense for its protection and benefit. Such evasion should not be allowed to succeed.

What a mockery of substantial justice it would be for a corporation, whose property is worth to its stockholders for the purpose of income and sale, vast sums of money, to be held liable for taxation only upon an inconsequential portion of its wealth, and that only by reason of assessment of real estate which found its way upon the tax rolls in the names of other persons; and where in the whole phase of the case there has been no compliance with or attempted conformation to the provisions of law requiring a corporate return and a corporate assessment of moneyed capital, surplus and undivided profits for tax purposes. Adams Express Co. v. Ohio, 166 U. S. 185, 41 L. Ed. 965, 71 Sup. Ct. 604.

My view is expressed in Robertson v. U. S. Nursery Co. (Miss.) 83 So. 307, where it was held:

"There is no merit in the contention that merely because all of the capital stock of the appellee corporation has been invested in real and personal property and that its real and personal property has been assessed and subjected to taxation, the corporation

cannot now be back-taxed upon any portion of its capital stock. The record shows that the corporation has neither been assessed upon capital stock eo nomine, nor paid taxes upon the value of its capital stock as such."

As to the general policy of the law regarding assessments for taxation, see: Anderson v. Ritterbusch, 22 Okla. 761, 98 Pac. 1002; Harvester Bldg. Co. v. Hartley, 99 Kan. 73, 160 Pac. 971; Washburn Wire Co. v. Bliss, 42 R. I. 32, 105 Atl. 179; State v. Duluth, G. & W. Co., 76 Minn. 96, 78 N. W. 1032, 57 L. R. A. 63; People v. Commissioners, 95 N. Y. 554; Commonwealth v. Ky. Heating Co., 176 Ky. 35, 195 S. W. 459; Adam v. Clarke (Miss.) 31 So. 216; Noyes v. Hale, 137 Mass. 266; Sturges v. Carter, 114 U. S. 511, 29 L. Ed. 240.

The Oklahoma Natl. Life Ins. Co. Case, supra, expressed the view that "taxable personal property not included within that assessment (under the name of moneyed capital, surplus and undivided profits) will escape taxation." I cannot follow that statement in its entirety. It must be remembered that the scope of the taxing statute, section 9606, supra, may be almost reduced in application to include merely intangibles. It begins with the aggregate value of moneyed capital, surplus and undivided profits. It is true that tangible personal property in which the capital may be invested goes to make up the aggregate value taxed, yet there is provision for the taxing of the tangible personal property wherever located. Such provision is contained in section 9625, C. O. S. 1921:

"When a person is doing business in more than one county, the property and credits existing in any one of the counties are to be listed and taxed in that county; and credits not existing in nor pertaining especially to the business in any one county are to be listed and taxed in that county where his principal place of business may be," etc.

Section 3543, C. O. S. 1921, reads as follows:

"The word 'person,' except when used by way of contrast, includes not only human beings but bodies politic or corporate."

So "person," as used in section 9625, supra, means "corporation" as well.

It is true such enactment was of the date of 1909, and carried forward as section 7330, R. L. 1910, yet it was construed in Re Assessment of Chickasha Cotton Oil Co., 80 Okla. 101, 194 Pac. 215, so as to be effective and considered in pari materia with section 9606, supra, where it was held:

"When a taxpayer is doing business in

more than one county in the state, the property and credits existing in any one of the counties are to be listed in that county. Section 7330, R. L. 1910. In case of a local corporation, the value of its real estate and the value of its property and credits existing in counties other than in the county where the corporation is located must be deducted from the net value of its moneyed capital, surplus and undivided profits as a basis for assessment in the county where it is located. Section 7330, R. L. 1910; sec. 4, c. 107, S. L. 1915; section 7318, R. L. 1910; sec. 1, c. 203, S. L. 1919."

I would follow that rule. Another reason why I would follow it is that the ninth item required to be reported by the corporate return under section 9962, as contained in the amendment of 1915, is:

"Description, the location and assessed value of all **real estate and tangible personal property** owned by such corporation, listed and assessed separately in its name."

That provision contemplates local assessment of tangible personal property as required by section 9625, supra.

The record justifies the finding that the paid-up capital was never below $75,000, and that it was never impaired. The intent of the statute is to assess the actual value of the property or estate of the corporation, allowing deductions for the assessed value of any real estate located in this state, owned by the corporation and listed separately in its name, as well as deductions for the assessed value of personal property, owned by such corporation listed and assessed separately in its name. See In re Oklahoma Natl. Life Ins. Co., supra, for mortgage exemptions. 2 Cooley on Taxation (4th Ed.) section 870.

It is not necessary nor contemplated that the surplus and profits be identified and taxed separately. The subject of taxation is the "aggregate" moneyed capital, surplus and undivided profits.

In Harvester Bldg. Co. v. Hartley, supra, where it was contended that the corporation had disposed of all of its capital stock and invested the proceeds in real estate upon which taxes had been paid, and that the deduction of the amount of stock so invested from the amount paid in would leave nothing to be listed and taxed, the Kansas court said:

"That conclusion seems obviously to have been based upon the interpretation of the statute which has been contended for by the plaintiff and which this court for the reason already stated is unable to accept."

The Kansas Supreme Court held that, where the corporation was engaged in no other business than in renting real estate which it had procured by the expenditure of the whole amount paid in by stockholders, and where taxes had been paid upon the real estate, the capital of such a corporation should be taxed at its true value, less the amount assessed against specific property as provided by their statute.

Likewise I would hold that the county court erred in considering the money (value) derived from the sale of capital stock nonassessable, because it had been invested in tangible properties upon which taxes had been paid, and in only adjudging assessable the surplus and undivided profits as elements separate and apart from the aggregate "moneyed capital, surplus and undivided profits."

There is no injustice in this view, if the law is followed, for a just value will be placed upon the capital of the corporation and a proper deduction is allowable for the assessed value of real estate and personal property under specified conditions. If the real and personal property is overvalued when assessed as such, the fault is compensated by a consequent reduction in the corporate tax; if the real estate is undervalued, the gain in the lessened real estate tax is balanced by the loss in the increased corporate tax, so the result is the same.

The only authorized deduction from the assessable value of the corporate wealth, under section 9606, supra, is "less the assessed valuation of any real estate located in this state, owned by such corporation and listed separately in its name." To that deduction is added that for personal property, locally assessed, as heretofore set out.

The Cotton Company relies upon Payne County v. Empire Petroleum Co., 104 Okla. 42, 230 Pac. 710. That was a case wherein it was sought to tax oil in storage as omitted property. That was not a case wherein intangibles were sought to be taxed which had been omitted, but it concerned the specific taxing of tangible personal property. The fact was that tax had been paid upon the said tangible personal property—true, by another—and this court properly held the same was not omitted property. But in the case at bar the state desires to tax the intangibles together with all other value of the corporation omitted and not otherwise taxed, and in order to refrain from double taxation, the state permits deductions for certain assessed value of property of the corporation.

Is the Cotton Company entitled to deduct from the assessed value of its corporate wealth the assessed value of gin properties located in various counties of this state, which gin properties were assessed in the name of individuals, other firms and other corporations, although this Cotton Company claims ownership, possession, and control, and for which it claims it has paid taxes assessed against such properties? The Cotton Company relied upon its fancy of the result desired by the state, rather than the process, whereas its adversary points out that to allow such deductions will defeat the purposes of the statute. This court has said that statutes authorizing deductions are to be strictly construed. In re Okla. Nat. Life Ins. Co., supra.

"That such deductions are not permitted in the absence of a statute is well settled, and it has been held that statutes authorizing the same should be strictly construed."

I would hold the plain import of the words of the taxing statute, section 9606, supra, is that deductible amounts from the corporate assessment for **real estate** must be limited to (1) assessed valuation of real estate, (2) located in this state, (3) owned by such corporation, and (4) listed separately in its name. Now the one element lacking to entitle this deduction for real estate, providing the Cotton Company's claim is substantiated by proof, is the 4th, i. e., that the real estate was not listed in its name. Deductions are not allowable, unless compliance is had with the statute authorizing deductions, in so far as it is possible for such a corporation to comply with the listing of its real property.

Now, if there was error in the assessment of the real estate belonging to this corporation, for which it now seeks deductions, it may be that matter could be shown and corrected so as to render allowable the deductions claimed, but, on the other hand, if the corporation is at fault in not causing an assessment of such real estate to be made in its name, it should not be heard to complain, and the deductions should be denied where compliance is not made with the requirements of the statute.

"The only corporations which are to be regarded as owners of real estate, the value of which is to be deducted from the valuation of their stock, are those to whom the land is directly assessable and who are primarily chargeable with the taxes thereon." 2 Cooley on Taxation (4th Ed.) 890. Baltimore v. Canton Co., 63 Md. 218.

The statutes provide for assessment in

the owner's name, except in case of disability. Sections 9617, 9625, 9645, 9663, 9668, 9673, 9674, C. O. S. 1921.

This, and all other such corporations, are called upon to make return of its property, and if it defaults in making return and does not disclose as provided by statute that any portion of its wealth is not subject to taxation, when the state has established the corporation's actual cash value, based upon what the corporation is worth as to income and consequently at voluntary sale, it cannot complain if the state treats its property as all taxable, less deductions allowable, as the Supreme Court of the United States said:

"It is suggested that the company may have bonds, stocks, or other investments which produce a part of the value of its capital stock, and which have a special situs in other states, or are exempt from taxation. If it has, let it show the fact." 166 U. S. 222, 41 L. Ed. 978.

Complaint is made concerning the burden of proof.

I would hold the burden was upon the state to show that in the years named the moneyed capital, surplus and undivided profits of the corporation were of a stated value and that an assessment of said property was omitted from the tax rolls. In re Daniels' Omitted Property, 108 Okla. 195, 233 Pac. 543.

I think the state amply sustained the burden of proof by showing affirmatively that such property existed and that an assessment had not been made as required by law.

The dividend record from the minute book is as follows:

| | | |
|---|---|---|
| May 18, 1911 | 15% | |
| June 30, 1911 | 5% | 20% |
| May 14, 1912 | | 20% |
| May 13, 1913 | | 12½% |
| In 1914 | None | |
| April 10, 1915 | | 20% |
| April 28, 1916 | | 10% |
| April 11, 1917 | | 20% |
| April 10, 1918 | | 10% |
| May 13, 1919 | | 5% |
| May 11, 1920 | | 20% |
| June 25, 1922 | None | |
| May 8, 1923 | | 50% of earnings were directed to be added to surplus account. |
| May 16, 1924 | | 30% |

I think the lower court was in error in not considering for assessment, the value of the capital stock, and in not holding that deductions from the corporate assessment

under section 9606, supra, for real estate are limited to the assessed value of real estate located in this state, owned by such corporation and listed separately in its name.

Note.—See under (4) 26 R. C. L. p. 173; 4 R. C. L. Supp. p. 1647.